**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| BENITO ARAIZAGA MERCADO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MARATHON HEALTH, LLC, a Delaware limited liability company,<br><br>Defendant. | **CASE NO.**<br><br>**CLASS ACTION**<br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Benito Araizaga Mercado ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Marathon Health, LLC ("Marathon" or "Defendant"). Plaintiff alleges the following based on personal knowledge as to himself and his own acts and, as to other matters, upon information and belief and the investigation of his counsel.

## NATURE OF THE ACTION

1. This action arises from Marathon's failure to safeguard the personally identifiable information and protected health information (collectively, "Private Information") it collected and maintained in connection with healthcare services. Marathon provides on-site, near-site, and virtual healthcare to employees and family members of participating organizations throughout the United States. Its business depends on collecting and maintaining confidential information entrusted to it for care and the administration of that care.

2. On August 24, 2026, an unauthorized individual impersonated a Marathon

information-technology worker, obtained an employee's credentials, used those credentials to enter a cloud-hosted application, and exported information from Marathon's back-end healthcare-operations database (the "Data Breach"). Marathon has acknowledged that the unauthorized access and export occurred within a few hours that day.[1]

3. The compromised records included names, dates of birth, contact information, Social Security numbers, medical information, and health-insurance information. These combinations of identifying and medical information expose affected persons to identity theft, medical-identity theft, targeted fraud, and enduring loss of medical confidentiality.

4. Marathon detected suspicious activity on August 24, 2026 and disabled the employee's account. On September 9, 2026, its investigation validated that an unauthorized person had obtained personal information. Marathon did not begin notifying affected individuals until October 20, 2026. The Data Breach reportedly affected approximately 5.7 million individuals.[2]

5. Marathon collected and retained Plaintiff's and Class Members' Private Information as part of its healthcare business and undertook to safeguard that information. Defendant failed to employ reasonable safeguards appropriate to the sensitivity of the information, allowing unauthorized persons to access and acquire confidential patient information.

6. Plaintiff seeks relief for the unauthorized access, acquisition, and improper disclosure of Private Information; loss of confidentiality and control over medical information; and the other injuries alleged below. The Class's damages include the loss of paid-for protections,

---

[1] Marathon Health, Notice of Data Breach, California notification, https://oag.ca.gov/system/files/Marathon_California%20Notification.pdf; HIPAA Journal, Marathon Health Data Breach Reportedly Affects 5.7 Million Individuals (Nov. 3, 2026), https://www.hipaajournal.com/marathon-health-data-breach/.

[2] HIPAA Journal, Marathon Health Data Breach (Nov. 3, 2026), https://www.hipaajournal.com/marathon-health-data-breach/.

lost time and opportunity costs associated with reasonable monitoring and response, anxiety and emotional distress, and other transaction and mitigation losses sustained by affected members. Plaintiff and Class Members also seek reasonable future monitoring and protective assistance and an injunction requiring Marathon to safeguard the information it continues to retain.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The proposed Class contains more than 100 members; the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and minimal diversity exists. Plaintiff is a citizen of California. For purposes of § 1332(d), Marathon is a citizen of Delaware, the State under whose laws it is organized, and Indiana, where it maintains its principal place of business. 28 U.S.C. § 1332(d)(10). The requested relief for a breach affecting approximately 5.7 million people—including compensatory and nominal damages, reasonable monitoring and mitigation costs, and applicable statutory damages—places more than $5,000,000 in controversy.

8. This Court has personal jurisdiction over Marathon because its principal place of business is in Indianapolis, Indiana, and it conducts and directs substantial business operations in this District. Marathon's decisions concerning the administration and protection of its healthcare-operations information were made or directed, at least in substantial part, from its headquarters in this District.

9. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because Marathon resides in this District for venue purposes and a substantial part of the events and omissions giving rise to these claims occurred here, including the direction and administration of the challenged information-security practices. Assignment to the Indianapolis Division is appropriate because Marathon maintains its headquarters in Marion County.

## THE PARTIES

### A. Plaintiff Benito Araizaga Mercado

10. Plaintiff Benito Araizaga Mercado resides in Santa Maria, Santa Barbara County, California, and is a citizen of California. Marathon maintained his personal information in its healthcare-operations database and notified him that his information may have been viewed or taken by an unauthorized person by letter dated October 29, 2026.

### B. Defendant Marathon Health, LLC

11. Defendant Marathon Health, LLC is a Delaware limited liability company with its principal place of business at 10 West Market Street, Suite 2900, Indianapolis, Indiana 46204. Marathon provides employer-sponsored healthcare services throughout the United States, including California, and collects, maintains, and controls identifying and medical information in connection with those services.[3]

## FACTUAL ALLEGATIONS

### A. Plaintiff's Transactions with Defendant

12. Marathon notified Plaintiff that information it maintained concerning him may have been viewed or taken in the Data Breach. Marathon described the affected system as a back-end healthcare-operations database. Marathon issued that notice after its investigation validated that an unauthorized person had obtained personal information from the database in which Plaintiff's information was maintained. Plaintiff's letter is dated October 29, 2026—66 days after Marathon detected the intrusion and 50 days after it validated that personal information had been taken. The letter listed his name, date of birth, contact information, Social Security number, insurance

---

[3]Marathon Health, Contact, https://marathon.health/contact; Marathon Health, Privacy Policy Center, https://marathon.health/privacy-policy-center.

information, and diagnosis and/or treatment information as the categories of information that may have been involved for him—categories that reflect records of his care and that Marathon omitted from the generic notice it filed with the California Attorney General.

13. Marathon obtained and maintained Plaintiff's information in connection with the provision and administration of healthcare services and maintained records linking his identity to those services.

14. Plaintiff did not authorize a person impersonating Marathon personnel to obtain, copy, retain, or exploit his confidential information. He reasonably expected that information held for healthcare purposes would be protected against that unauthorized acquisition and disclosure.

15. Plaintiff's Private Information was among the data accessed and acquired in the Data Breach, as Marathon's individualized notice to him reflects.

16. The unauthorized acquisition deprived Plaintiff of confidentiality and control over information maintained about him for healthcare purposes. His identifying and medical information passed outside the authorized healthcare relationship into the possession of an unauthorized person. Once copied into unauthorized hands, the confidentiality of that information cannot simply be restored by disabling an employee's account.

17. Marathon continues to retain Plaintiff's Private Information in its healthcare-operations records and backups. Plaintiff remains dependent upon Marathon to protect information in its custody against further unauthorized access and disclosure.

18. After learning of the Data Breach, Plaintiff spent time investigating its impact and monitoring his personal information for misuse. These reasonable efforts diverted his time from other activities, and that time cannot be recovered. He will continue to spend time monitoring and taking reasonable protective measures to mitigate further damages and fraud because the

information can be retained and misused long after the Data Breach. The time he has lost cannot be recovered, and the confidentiality of his sensitive medical information, once compromised, cannot be restored. Plaintiff has experienced anxiety and distress over the loss of confidentiality and control of his Private Information and the possibility that strangers will review, exploit, or further disclose it.

19. Plaintiff's information was maintained for healthcare and related administrative purposes, not for unauthorized acquisition or exploitation. Marathon's custody of that information carried obligations to preserve confidentiality and use reasonable safeguards.

20. Marathon solicited and accepted information concerning Plaintiff in providing or administering healthcare services. Marathon accepted and used that information for its business while undertaking to maintain its confidentiality. Its reasonable protection was a material component of the confidential healthcare relationship.

21. Paying Class Members paid money for healthcare services from Marathon. The confidentiality and reasonable protection of the sensitive information Marathon required patients to provide were material components of those services. Reasonable security protects the records needed to provide and administer the care for which patients and their health plans pay.

22. Marathon did not disclose material deficiencies in the safeguards it maintained for the Private Information it collected and retained. Patients furnished sensitive information for care without access to Marathon's internal security practices. Marathon accepted and retained that information while failing to provide the reasonable confidentiality protections associated with its healthcare services.

23. The value of the services purchased by paying Class Members included reasonable safeguarding of the records needed to provide those services. By furnishing care without those

protections, Marathon deprived those members of part of what they paid for. Their economic loss includes the difference between the value of services with reasonable safeguards and the services actually provided.

24. Measures taken after unauthorized access cannot restore confidentiality or retrieve copies of information acquired by an unauthorized person. Monitoring accounts may help identify some misuse, but it cannot prevent every misuse of medical information or make exposed records private again.

25. Marathon continues to maintain Plaintiff's Private Information in its systems and records. Plaintiff remains exposed to the consequences of its continued retention of that information and has an interest in reasonable safeguards against further unauthorized access and disclosure.

**B. Marathon Collected Private Information and Undertook to Protect It**

26. Marathon provides on-site, near-site, and virtual healthcare to employees and their families through arrangements with employers and other organizations. Its services require identifying patients and maintaining records of healthcare, benefits, insurance, and related administration. Its operations extend across state lines and include healthcare services in California.

27. Marathon operates two Employee Health and Wellness Centers for Santa Barbara County. In June 2025, the County approved a renewed agreement for July 1, 2025 through June 30, 2028, with first-year base compensation of $1,043,307 plus reimbursement of laboratory and pharmaceutical costs. Marathon's healthcare services thus generate revenue through employer-

sponsored arrangements, even when a patient does not pay the provider at the point of care.[4]

28. Marathon's healthcare-operations database linked identifying information to healthcare and related administrative records. Marathon's reports to state regulators identified medical and health-insurance information among the compromised data categories.

29. Patients provide this information for their treatment and the administration of their care. They do not provide it for access by unauthorized persons, public dissemination, sale, or criminal use. Marathon knew that the information was confidential and that patients expected it to be protected.

30. Marathon's Privacy Policy Center, effective May 4, 2026, states: "At Marathon Health, protecting your privacy is an important part of the care and services we provide." The policy addresses information collected through its websites, member portal, and mobile application and describes the identifying information Marathon collects in its operations.[5]

31. Marathon's Notice of Privacy Practices, effective May 4, 2026, states that its responsibilities include: "Maintain the privacy and security of your PHI." It also undertakes to "Follow the terms of this Notice currently in effect." These statements describe the confidentiality and security obligations Marathon undertook in handling protected health information.[6]

32. Marathon's public description of its care further states: "Care is delivered in a secure, HIPAA-compliant environment that protects patient privacy." These representations concern a material characteristic of the healthcare services Marathon markets and provides: the

---

[4]Santa Barbara County, Agreement with Marathon Health, LLC, approved June 24, 2025, https://santabarbara.legistar.com/LegislationDetail.aspx?GUID=1ED76800-D58D-415B-B967-869DDE4E73D0&ID=7442130&Options=&Search=.
[5]Marathon Health, Privacy Policy Center (effective May 4, 2026), https://marathon.health/privacy-policy-center.
[6]Marathon Health, Notice of Privacy Practices (effective May 4, 2026), https://marathon.health/hubfs/2026%20Notice%20of%20Privacy%20Practices/NPP%20English.pdf.pdf.

protection of sensitive information entrusted to it.[7]

33. Marathon required Plaintiff and Class Members to provide sensitive information while failing to disclose material deficiencies in the measures it used to protect that information. The security of Marathon's internal systems, its allocation of security resources, and the adequacy of its safeguards were within its exclusive or superior knowledge.

34. Plaintiff and Class Members could not inspect Marathon's internal computer systems or independently determine whether the safeguards needed to protect their records had been implemented. They reasonably expected that Marathon would exercise reasonable care in storing their information and would provide the protections associated with its healthcare services.

35. Marathon's responsibility to preserve confidentiality continued after each appointment and for as long as it maintained the resulting records. Former patients and patients whose care preceded the intrusion remained dependent on Marathon to protect information it chose or was required to retain.

**C. The Data Breach and Unauthorized Access to Marathon's Patient Information**

36. On August 24, 2026, Marathon received an alert of suspicious activity involving an employee's account. It disabled the account and began an investigation with cybersecurity professionals. The investigation determined that an unauthorized person posing as a Marathon IT worker had obtained the employee's credentials.[8]

37. The unauthorized person used those credentials to access a cloud-hosted application and exported information during that access. Marathon's notice states that the credential

---

[7] Marathon Health, Advanced Primary Care for Organizations, https://marathon.health/.
[8] HIPAA Journal, Marathon Health Data Breach Reportedly Affects 5.7 Million Individuals (Nov. 3, 2026), https://www.hipaajournal.com/marathon-health-data-breach/.

compromise, access, and export all occurred within a few hours on August 24, 2026. That an impersonator could obtain working credentials, enter the application, and export the records of millions of patients within hours indicates that the controls that should have stopped or contained the intrusion—verification of credential requests, multifactor authentication, and alerts on bulk data export—were absent or ineffective.

38. The affected application involved a back-end healthcare-operations database. On September 9, 2026, Marathon validated that an unauthorized person had obtained personal information. Marathon did not begin mailing notification letters to affected individuals until October 20, 2026—57 days after the intrusion and 41 days after it completed its review of the affected data. The incident therefore involved actual export of information, not merely an unsuccessful attempt to enter the system.

39. Marathon's public notices identify names, dates of birth, contact information, and Social Security numbers among the involved categories. Reports to state regulators also identified medical and health-insurance information. Plaintiff's own notice listed insurance information and diagnosis and/or treatment information among the categories of information that may have been involved for him. The acquired records included identifying information linked to confidential information concerning patients' medical conditions, treatment, and healthcare services.[9]

40. The unauthorized person intentionally acquired the records for an unauthorized purpose, reviewed the exported material, and retained readable information outside Marathon's authorized environment.

41. Marathon offered affected individuals a twelve-month membership in identity monitoring through Epiq Monitoring Solutions, including credit monitoring, fraud consultation,

---

[9] Id.

and identity-restoration services. Those services do not restore the confidentiality of medical information already acquired, prevent every form of medical-identity theft, or address risks persisting after the monitoring period ends.[10]

42. Plaintiff and Class Members did not authorize third parties to access, acquire, retain, review, publish, sell, or otherwise use their Private Information outside the authorized healthcare relationship. They furnished their information for care and its administration.

43. Defendant failed to implement reasonable measures to restrict unauthorized access to patient information, detect and interrupt the intrusion, and prevent the acquisition of patient records. Unauthorized access to those sensitive records compromised the confidentiality Marathon was required to preserve.

**D. Marathon's Continuing Responsibilities to Affected Patients**

44. Marathon's responsibilities continued after detecting the intrusion. Reasonable response required containing access, investigating and determining the categories of data stolen, preserving relevant evidence, and providing information that would allow affected persons to take protective action. Its notices identified categories of information it said may have been involved.

45. Marathon stated that it had implemented and would continue to adopt additional safeguards to protect and monitor its environment. The announced measures do not retrieve information already exported or restore patients' lost confidentiality. Marathon remains responsible for protecting information it retains and addressing the conditions that enabled credential impersonation and unauthorized export.

---

[10] Id.

**E. Defendant's Duties and Applicable Security Standards**

46. Marathon is a covered entity under HIPAA and a provider of health care, contractor, or other entity subject to the CMIA in its provision and administration of healthcare services and its maintenance of California patients' medical information. Marathon undertakes the provision of care through licensed healthcare professionals and maintains identifiable patient information in connection with that care.

47. Civil Code section 56.101(a) requires covered healthcare providers to create, maintain, preserve, and store medical information in a manner that preserves its confidentiality. This duty applies to Marathon's handling of Plaintiff's and Class Members' medical information independently of any contractual promise.

48. The HIPAA Security Rule requires covered entities to protect the confidentiality, integrity, and availability of electronic protected health information and to protect against reasonably anticipated threats and impermissible uses or disclosures. The Rule requires administrative, physical, and technical safeguards appropriate to the information maintained by the covered entity.[11]

49. Those safeguards include assessing risks and vulnerabilities, managing identified risks, controlling access to electronic records, training personnel, monitoring system activity, and identifying and responding to security incidents. A healthcare provider must review and modify its security measures as needed to maintain reasonable and appropriate protection.

50. The required administrative safeguards include an assessment of risks and vulnerabilities to electronic protected health information, measures reducing identified risks to a

---

[11] HHS, Summary of the HIPAA Security Rule, https://www.hhs.gov/hipaa/for-professionals/security/laws-regulations/index.html.

reasonable and appropriate level, and regular review of information-system activity. They also include workforce security, security-awareness training, and procedures to identify, respond to, mitigate, and document security incidents. 45 C.F.R. § 164.308(a)(1), (3), (5), and (6).[12]

51. The technical safeguards include access controls limiting electronic protected health information to authorized persons or programs, audit controls recording and examining system activity, identity authentication, and transmission security. The Rule also requires covered entities to assess and implement reasonable and appropriate measures addressing encryption and decryption, automatic logoff, and protection of information in transit under the Rule's implementation requirements. 45 C.F.R. §§ 164.306(d), 164.312(a), (b), (d), and (e).[13]

52. The HIPAA Privacy Rule also requires appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information and reasonable safeguards against impermissible intentional or unintentional uses or disclosures. 45 C.F.R. § 164.530(c). These obligations apply to the identifiable patient information Marathon obtained and maintained in providing care.

53. The Federal Trade Commission's guidance instructs businesses to inventory sensitive information, limit collection and retention to legitimate needs, restrict access, protect stored and transmitted data, train employees, monitor systems, and prepare for security incidents. The guidance addresses encryption, authentication, vulnerability assessments, and the timely correction of security problems.[14]

---

[12] 45 C.F.R. § 164.308, https://www.ecfr.gov/current/title-45/subtitle-A/subchapter-C/part-164/subpart-C/section-164.308.

[13] 45 C.F.R. § 164.312, https://www.ecfr.gov/current/title-45/subtitle-A/subchapter-C/part-164/subpart-C/section-164.312.

[14] Federal Trade Commission, Protecting Personal Information: A Guide for Business (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.

54. The FTC specifically recommends reviewing logs for unusual network activity, using intrusion-detection tools, and monitoring outgoing traffic for unexpected large transfers to unknown users. It also recommends limiting access to employees with a legitimate need, assessing service providers' safeguards, disposing securely of information no longer needed, and establishing a plan for responding to a breach. These practices address both initial intrusion and the removal of records from a business's systems.[15]

55. These published security practices address well-known risks arising when an organization collects and retains sensitive personal information. They identify practical precautions against unauthorized access, acquisition, and disclosure and further inform the reasonable care required in handling confidential patient records.

56. The NIST Cybersecurity Framework 2.0 likewise identifies governance, identification, protection, detection, response, and recovery as core cybersecurity functions. It provides a recognized framework for managing access, protecting data, identifying vulnerabilities, detecting threats, and responding to incidents.[16]

57. The NIST Framework identifies authentication and management of credentials, access permissions based on least privilege, workforce training, protection of stored and transmitted data, software maintenance, and generation of security logs as cybersecurity outcomes. It also addresses monitoring networks, computing environments, personnel activity, and service providers for potentially adverse events, followed by incident management and response. These measures provide recognized means of identifying security gaps and reducing the risks associated

---

[15] Federal Trade Commission, Protecting Personal Information: A Guide for Business (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.

[16] National Institute of Standards and Technology, The NIST Cybersecurity Framework (CSF) 2.0 (Feb. 26, 2024), https://doi.org/10.6028/NIST.CSWP.29; https://www.nist.gov/cyberframework.

with maintaining sensitive records.[17]

58. The Center for Internet Security's Critical Security Controls likewise provide a prioritized set of safeguards to defend systems and networks against prevalent cyberattacks. Those controls are mapped to legal, regulatory, and policy frameworks and are designed to identify practical, measurable measures that organizations can implement against known attack methods.[18]

59. Before the Data Breach, the prevalence of cyberattacks against healthcare providers and other entities maintaining sensitive personal information made unauthorized access, theft, and publication of patient records foreseeable. Defendant knew or should have known that the information in Marathon's systems would be an attractive target for cybercriminals.

60. Federal law enforcement had long warned businesses about the theft and criminal use of personal information. In September 2011, the FBI warned that criminals were improving their ability to compromise systems remotely and used that access to obtain personally identifiable information for financial gain.[19]

61. A national study of publicly reported data compromises documented 3,158 compromises across industries in 2024 and more than 1.35 billion victim notices. The study identified 536 healthcare compromises in 2024 and 811 in 2023. Healthcare had been the most frequently compromised industry from 2018 through 2023 and remained the second most frequently compromised industry in 2024.[20]

62. The FBI's Internet Crime Complaint Center likewise reported 238 ransomware

---

[17] National Institute of Standards and Technology, The NIST Cybersecurity Framework (CSF) 2.0, at 19–22 (Feb. 26, 2024), https://nvlpubs.nist.gov/nistpubs/CSWP/NIST.CSWP.29.pdf.
[18] Center for Internet Security, CIS Critical Security Controls Version 8, https://www.cisecurity.org/controls/v8.
[19] Gordon M. Snow, Assistant Director, Cyber Division, Federal Bureau of Investigation, Cyber Security: Threats to the Financial Sector, Statement Before the House Financial Services Committee (Sept. 14, 2011), https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector.
[20] Identity Theft Resource Center, 2024 Annual Data Breach Report, at 7, 9, 25 (2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport_Final_020325.pdf.

complaints and 206 data-breach complaints involving the healthcare and public-health sector in 2024. Together, those 444 complaints represented the highest combined total of ransomware and data-breach complaints among the critical-infrastructure sectors identified in the report.[21]

63. Defendant's custody of sensitive patient information required reasonable precautions against foreseeable attempts to obtain that information. The information could be used to impersonate patients, obtain treatment or benefits in their names, commit fraud, or expose private medical facts. The sensitivity of the records and the consequences of disclosure made reasonable security essential.

64. Defendant failed to adequately assess and address security risks in the systems holding patient records. It failed to reasonably design, maintain, and test those systems; identify and correct material vulnerabilities; and review the effectiveness of its safeguards as threats and system conditions changed.

65. Defendant failed to implement and maintain adequate authentication and access restrictions for sensitive patient records and to protect the information against unauthorized retrieval and removal. These failures allowed unauthorized persons to reach and acquire records that should have been confined to authorized users and purposes.

66. Defendant failed to adequately monitor system activity and outgoing transfers, identify unauthorized access, and interrupt the acquisition and removal of patient files. The attackers were consequently able to acquire and retain information outside Marathon's authorized environment.

67. Defendant failed to adequately train and supervise the personnel responsible for

[21] Federal Bureau of Investigation, 2024 IC3 Annual Report, at 12 (2025), https://www.ic3.gov/AnnualReport/Reports/2024_IC3Report.pdf.

handling patient records and securing the systems that contained them, and failed to reasonably oversee agents and service providers to whom it entrusted security-related responsibilities. Defendant also failed to respond effectively to the intrusion and its consequences.

68. Had Defendant employed reasonable safeguards appropriate to the information it maintained, the unauthorized access, acquisition, and disclosure alleged here would have been prevented or materially limited. Defendant's failure to safeguard the information caused the Data Breach and the resulting loss of confidentiality.

69. Consumers place substantial importance on the protection of their personal information when choosing providers. Cisco's 2024 Consumer Privacy Survey, based on responses from more than 2,600 adults in twelve countries, found that three-quarters of respondents would not purchase from an organization they did not trust with their data. The findings reflect the importance of privacy and trust to purchasing decisions.[22]

**F. The Continuing Consequences of the Data Breach**

70. Stolen personal information is traded and used by criminals to commit fraud, create false identification documents, and support other unlawful activity. Information obtained in one breach can be combined with information from other sources to identify and target an individual.[23]

71. Medical records are particularly valuable in criminal markets. In an April 2021 cybersecurity advisory, the U.S. Department of Health and Human Services described healthcare information as highly monetizable and cited studies reporting that individual medical records could sell on the black market for as much as $1,000. That market creates a financial incentive to obtain

---

[22] Cisco, 2024 Consumer Privacy Survey, at 3–4, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf.

[23] John Krebs, The Dark Web: What Your Business Needs to Know, Federal Trade Commission (Oct. 17, 2017), https://www.ftc.gov/business-guidance/blog/2017/10/dark-web-what-your-business-needs-know.

and trade detailed patient information.[24]

72. Criminals also trade packaged dossiers known as “Fullz,” which bundle identifying and financial information about a person, including names, dates of birth, Social Security numbers, and bank account and routing numbers. These packages can be used to impersonate the person and carry out fraud. The Department of Justice has documented the sale of such packages through online markets and their use to file fraudulent tax returns.[25]

73. To assemble Fullz packages, criminals can combine information acquired in one breach with information from other sources. Linking identifying information across those sources produces a more complete profile that can include contact information, driver’s-license details, and financial information. An attacker need not obtain every identifier or financial field from a single breached database to create or expand such a package.[26]

74. Identifying and medical information compromised in the Marathon Data Breach can be matched with information from other sources to build or supplement these dossiers, facilitate impersonation, and make fraudulent communications appear credible to Plaintiff and Class Members. The information links identifiable individuals to their healthcare and can be used to target those patients.

75. Information shared or sold through criminal online markets can be copied and redistributed across multiple platforms. Its disclosure can therefore continue after the initial theft

[24] U.S. Department of Health and Human Services, Health Sector Cybersecurity Coordination Center, Application Programming Interfaces and Healthcare Cybersecurity, at 1 (Apr. 26, 2021), https://www.hhs.gov/sites/default/files/api-securiy-hph-analyst-note-tlp-white.pdf.

[25] U.S. Department of Justice, Vietnamese National Sentenced to 13 Years in Prison for Operating a Massive International Hacking and Identity Theft Scheme (July 14, 2015), https://www.justice.gov/archives/opa/pr/vietnamese-national-sentenced-13-years-prison-operating-massive-international-hacking-and.

[26] Christine Barry, From Data Breaches to Account Takeovers: The Business Risk of Fullz, Barracuda Networks (updated Sept. 3, 2026), https://blog.barracuda.com/2026/07/22/from-data-breaches-to-account-takeovers--the-business-risk-of-fu.

and after the organization that held the information restores its systems. Each additional copy places the information beyond the affected person's control and permits further dissemination and misuse.[27]

76. Medical records contain information that cannot readily be changed, including a patient's medical history, diagnoses, and prior treatment. Once that information has been acquired and copied by unauthorized persons, the patient cannot recover every copy or control its further disclosure.

77. Unauthorized disclosure of sensitive medical information exposes affected patients to risks of discrimination, stigmatization, reputational harm, embarrassment, and emotional distress, and can adversely affect their employment and insurance interests. Patients lose control over who may obtain and use the medical information they entrusted to Marathon.[28]

78. Medical identity theft can involve using a person's name, Social Security number, or insurance information to obtain treatment, prescription drugs, medical devices, or insurance payments. Incorrect information can then become part of the victim's medical records, affecting future care. Misuse can also create disputed medical bills and collection activity, affect credit, or consume insurance benefits.[29]

79. Addressing medical identity theft can require obtaining and reviewing records from healthcare providers, pharmacies, laboratories, and insurers, identifying treatment or charges

---

[27] Ben Luthi, Here's What Your Data Sells for on the Dark Web, Experian (June 30, 2025), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web.

[28] Federal Trade Commission, Mobile Health App Interactive Tool, Question 11, "Do More Good than Harm," https://www.ftc.gov/business-guidance/resources/mobile-health-apps-interactive-tool; National Committee on Vital and Health Statistics, U.S. Department of Health and Human Services, Health Information Privacy Beyond HIPAA: A Framework for Use and Protection, A Report for Policy Makers, at 14–15 (June 18, 2019), https://ncvhs.hhs.gov/wp-content/uploads/2019/07/Report-Framework-for-Health-Information-Privacy.pdf.

[29] Federal Trade Commission, What To Know About Medical Identity Theft, https://consumer.ftc.gov/articles/what-know-about-medical-identity-theft.

belonging to someone else, and requesting corrections from multiple entities. These risks are particularly consequential where the compromised records combine identifying information with detailed medical histories and insurance information.

80. A criminal possessing information about a patient's treatment, billing, insurance, and providers can use that knowledge to make a fraudulent call, message, or request for information appear connected to genuine medical care. Exposure of those details creates opportunities for targeted deception beyond the misuse of an isolated account number.

81. The consequences can emerge long after a breach. The U.S. Government Accountability Office has reported that criminals may hold stolen information for a year or more before using it and that misuse may occur years after information has been posted or sold. The ability to retain and copy the information prolongs the period in which affected individuals must address the risk of misuse.[30]

82. The exposure of identifying and medical information creates risks of identity fraud, medical identity theft, targeted scams, impersonation, and disclosure of private medical facts. The use of the stolen information may occur after the initial theft, and its availability to unauthorized persons requires continued attention to suspicious activity.

83. Plaintiff's identifying and medical information lost its prior confidentiality when unauthorized persons accessed and acquired records Marathon maintained about his care. The compromise deprived Plaintiff of control over who could review and use that information. Affected Class Members also suffer transaction, investigation, mitigation, and emotional harms arising from the exposure, as alleged below.

---

[30] U.S. Government Accountability Office, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown, GAO-07-737, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

84. The confidentiality of the information entrusted to Marathon was valuable to Plaintiff and Class Members. Its unauthorized access and acquisition deprived them of control over who could obtain, review, and use their private records and diminished the value of information that previously remained confidential.

85. Monitoring credit and financial accounts does not prevent strangers from reviewing or redistributing medical information already taken from Marathon. A patient cannot replace the fact of past medical care in the way an account number can be changed. Exposure of those records therefore continues even where protective measures limit particular forms of financial misuse.

86. Because stolen identifying and medical information can be retained and reused, Plaintiff and Class Members face a continuing need to monitor for misuse and take reasonable protective measures. They seek the reasonable costs of future credit, identity, and medical-identity monitoring, identity-restoration assistance, and other mitigation measures responsive to the information exposed in the Data Breach.

87. Defendant continues to retain patient information. Without adequate safeguards, the information remaining in Defendant's custody remains vulnerable to further unauthorized access and disclosure. Plaintiff seeks measures addressing the collection, retention, access controls, monitoring, and protection of that information.

88. An award of damages for past harm would not correct deficient safeguards for information Defendant continues to retain or prevent another unauthorized disclosure of that information. Plaintiff and Class Members lack an adequate remedy at law for that continuing threat and seek injunctive relief requiring reasonable protection of their retained records.

89. Plaintiff and Class Members have suffered anxiety and emotional distress arising from the unauthorized exposure of their confidential information and the loss of control over who

can review, retain, or further disclose it.

90. The damages caused by the Data Breach include unauthorized access, acquisition, and improper disclosure of Private Information; loss of confidentiality and control; diminished value of information that previously remained private; and loss of reasonable safeguards undertaken in exchange for entrusting their Private Information. For affected Class Members, damages also include lost time and opportunity costs associated with reasonable monitoring and response; anxiety and emotional distress; lost benefit of the bargain; investigation and mitigation expenses; costs to restore identities and correct medical or financial records; and losses from misuse. Plaintiff and Class Members seek the reasonable costs of future credit, identity, and medical-identity monitoring, identity-restoration assistance, and other mitigation measures responsive to the information exposed in the Data Breach, together with relief for each injury sustained under the applicable causes of action.

91. An actual controversy exists concerning Defendant's continuing duties to protect the confidential information it retains and the adequacy of the safeguards applied to that information. Plaintiff's interest is current because Defendant continues to possess his patient records and backups, including records of care that has ended.

92. A continuing dispute exists over the adequacy of the safeguards Marathon applies to the patient information it retains and its continuing confidentiality duties. Upon information and belief, the conditions permitting the unauthorized access and acquisition have not been adequately remedied, and Plaintiff's and Class Members' retained records remain exposed to further unauthorized access and disclosure.

93. Under 28 U.S.C. §§ 2201 and 2202, Plaintiff seeks a declaration that Marathon owes continuing duties to use reasonable safeguards appropriate to the sensitive patient

information it retains; preserve that information's confidentiality; and comply with applicable requirements governing authorized access, retention, and disclosure.

94. Plaintiff also seeks corresponding injunctive relief requiring reasonable protection of the retained information. Monetary relief for an earlier disclosure does not ensure future protection or restore medical information to confidentiality, and repeated breaches would require further proceedings without adequately remedying the continuing privacy harm.

95. The requested prospective relief would protect patients from further unauthorized access and disclosure while requiring Defendant to provide the reasonable safeguards applicable to their healthcare operations.

## CLASS ACTION ALLEGATIONS

96. Plaintiff brings this action under Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), on behalf of himself and the following Nationwide Class and California Subclass (collectively, the "Class"):

> Nationwide Class: All persons in the United States whose Private Information was maintained by Marathon Health, LLC and was accessed or acquired by an unauthorized person in the August 24, 2026 Data Breach.
>
> California Subclass: All members of the Nationwide Class who resided in California at the time of the Data Breach.

97. Excluded from the Class are Defendant; its officers and directors; entities in which Defendant has a controlling interest; the judge assigned to this action and members of the judge's immediate family; and persons who timely and validly request exclusion from a certified damages class.

98. Plaintiff asserts the common-law claims on behalf of the Nationwide Class and the CMIA, CLRA, UCL, and California constitutional claims on behalf of the California Subclass. California claims concern California residents' information obtained and maintained in connection

with services provided or administered for them in California. Plaintiff also seeks declaratory and injunctive relief protecting retained records. References to Class Members within a California claim refer to members of the California Subclass.

99. *Numerosity.* The Class includes approximately 5.7 million persons reportedly affected by the same Data Breach. Both the Nationwide Class and California Subclass are sufficiently numerous that joinder is impracticable. Marathon operates healthcare services throughout the country, including California, and has issued notices to California residents. Membership is ascertainable by objective criteria identifying persons whose information was affected.

100. *Commonality.* Common questions include whether Defendant owed duties to safeguard Private Information; whether its security practices were reasonable; whether Defendant failed to preserve the confidentiality of patient records; whether Marathon breached obligations arising from its healthcare transactions; whether its representations and omissions were deceptive; and what damages, restitution, and injunctive relief are appropriate.

101. Additional common questions include what categories of records were accessed or acquired; whether Defendant reasonably assessed and tested its systems; whether access restrictions, authentication, monitoring, and incident-response measures were adequate; whether its acts or omissions permitted the acquisition and dissemination of patient records; and whether its continuing retention practices require corrective relief.

102. *Predominance.* The claims arise from common conduct concerning Marathon's collection, storage, security, and disclosure of patient information and the same intrusion into its systems. Common questions concerning those practices, the cause and scope of the Data Breach, and the resulting exposure predominate over questions affecting only individual members. Any

differences in available remedies may be addressed through claim-specific determinations or other appropriate case-management procedures.

103. *Typicality.* Marathon maintained Plaintiff's Private Information in the affected healthcare-operations database and sent him an individualized breach notice. His information was compromised by the same unauthorized access and export that affected Class Members. His claims arise from the same security practices, confidentiality obligations, and course of conduct. He is a member of the Nationwide Class and California Subclass.

104. *Adequacy.* Plaintiff will fairly and adequately protect the interests of the Class. His interests are aligned with those of the members he seeks to represent. Plaintiff has retained counsel experienced in consumer class actions and data-breach litigation.

105. *Superiority.* A class action provides an efficient method to resolve common issues arising from one Data Breach. The costs of individual litigation would exceed the amounts many members could recover. Separate proceedings would duplicate evidence and create a risk of inconsistent adjudications concerning the same conduct.

106. Defendant has acted or failed to act on grounds generally applicable to the Class, including the security of information it continues to maintain and the provision of information concerning the Data Breach. Appropriate injunctive and declaratory relief can address those practices on a common basis.

107. Plaintiff reserves the right to refine the Class definition consistently with the facts and the Court's orders.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Negligence
### (Plaintiff on behalf of the Class against Defendant)

108. Plaintiff incorporates the preceding allegations as though fully set forth here.

109. Defendant owed Plaintiff and Class Members a duty to exercise reasonable care in collecting, receiving, maintaining, storing, using, and protecting the Private Information entrusted to them. Defendant undertook custody and control of sensitive patient records and was responsible for the systems and practices through which those records were maintained.

110. Marathon actively solicited and required the information in connection with medical care. The patients whose information it collected constituted a defined and foreseeable group of persons who would be harmed if their confidential records were acquired, disclosed, or exploited by unauthorized persons. Defendant knew or should have known the sensitivity of the records and the consequences of failing to safeguard them.

111. Marathon's custody of identifiable medical information and its undertakings to preserve confidentiality imposed duties independent of its contractual obligations. As to California patients, Civil Code section 56.101(a) further required preservation of the confidentiality of medical information Marathon created, maintained, preserved, or stored.

112. The applicable HIPAA safeguards described above, including 45 C.F.R. §§ 164.306, 164.308, 164.312, and 164.530(c), further informed the standard of reasonable care in handling protected health information. The FTC's security guidance, recognized cybersecurity practices, and the nature and volume of the information similarly informed the precautions reasonably required of Defendant.

113. Reasonable care required safeguards appropriate to the sensitivity of the records, including risk assessments, access restrictions, authentication, protection of stored and transmitted

information, review of system activity, and measures to detect and interrupt unauthorized access and data removal.

114. Defendant's duties included reasonably designing, maintaining, and testing its systems; identifying and correcting material security vulnerabilities; and reviewing whether its safeguards remained effective as systems and threats changed. Defendant was required to allocate reasonable attention and resources to the protection of the records it chose to collect and retain.

115. Defendant also owed a duty to reasonably train and supervise employees and agents who handled patient information or maintained relevant systems, and to exercise reasonable care in overseeing contractors and vendors entrusted with security-related responsibilities. Those duties included reasonable oversight of how the information was stored, accessed, used, and transferred.

116. Reasonable care also required prompt detection and investigation of suspected intrusions, measures to contain the resulting exposure, and accurate information to affected patients concerning the occurrence, nature, and scope of a compromise. Such information was needed for patients to identify which records were at risk and direct appropriate protective measures.

117. Defendant breached its duties by failing to adequately assess security risks, test the systems holding patient records, identify and remediate material vulnerabilities, and maintain safeguards reasonably appropriate to the sensitive information in its custody.

118. Defendant further breached its duties by failing to maintain adequate authentication and access controls and by failing to reasonably protect patient records against unauthorized retrieval and removal. Its deficient safeguards permitted unauthorized persons to acquire records intended to remain within Marathon's authorized care and administrative environment.

119. Defendant failed to reasonably monitor network and system activity, detect

unauthorized access and transfers, interrupt the removal of patient records, and respond effectively to the intrusion. These failures permitted the attackers to acquire and retain patient information outside Marathon's authorized environment.

120. Defendant failed to reasonably train and supervise personnel responsible for patient information and to oversee the security-related work of its agents, contractors, and vendors. Its inadequate supervision contributed to the deficient handling and protection of the information alleged above.

121. Defendant's duties also required reasonable measures to contain the consequences of the intrusion and furnish affected patients with information permitting meaningful protective action. Those responsibilities continued after detection and accompanied the obligation to remedy the deficient safeguards described above.

122. The HIPAA safeguards described above provide relevant standards of reasonable conduct in protecting electronic medical information against credential theft and unauthorized export. Plaintiff and Class Members are within the population those safeguards protect, and the unauthorized acquisition of medical information is the type of harm the safeguards address.

123. As to the California Subclass, California Evidence Code section 669 supplies a presumption of failure to exercise due care when violation of a statute or regulation proximately causes the kind of injury the provision was designed to prevent to a person within its protected class.

124. As to the California Subclass, the CMIA requires covered providers and contractors to preserve medical confidentiality and to create, maintain, preserve, and store medical information accordingly. Plaintiff and affected California Class Members are persons whose identifiable medical information those duties protect.

125. Marathon violated those requirements by failing to preserve the confidentiality of the patient information entrusted to it and by maintaining it without the reasonable protections alleged above. Unauthorized acquisition and disclosure of confidential medical information are the very occurrences those requirements were designed to prevent.

126. Marathon's violations proximately caused the unauthorized acquisition and disclosure of Plaintiff's and Class Members' information and the resulting injuries alleged above. Plaintiff pleads these statutory standards and the presumption of negligence in support of this negligence claim.

127. Unauthorized attempts to obtain patient information for extortion, fraud, and other misuse were foreseeable consequences of inadequate data security. Defendant held information attractive to cybercriminals and knew or should have known that reasonable precautions were necessary to prevent the type of intrusion and disclosure that occurred here.

128. Defendant's breaches were a substantial factor in causing unauthorized persons to access and acquire Plaintiff's and Class Members' Private Information. Had Defendant exercised reasonable care in safeguarding, monitoring, and protecting the information, the acquisition and disclosure would have been prevented or materially limited.

129. The unauthorized access and acquisition deprived Plaintiff and Class Members of the confidentiality and control of information concerning their medical care. Records entrusted to Marathon for healthcare became accessible to unauthorized persons and exposed to further review, use, and dissemination.

130. The Data Breach imposes investigation and mitigation burdens on affected Class Members. Reasonable protective measures include determining what information was exposed, reviewing account statements and healthcare or insurance records, evaluating suspicious

communications, and arranging appropriate identity protection. Those measures consume time and resources and divert attention from work, family, and other responsibilities. Plaintiff seeks reasonable future monitoring and mitigation measures responsive to the information exposed.

131. Paying Class Members also lost the reasonable data-security protections included in the healthcare services for which they paid. Affected Class Members suffer anxiety and distress concerning the exposure of sensitive information. The confidentiality loss, loss of paid-for protections, distress, and reasonable monitoring and response burdens are foreseeable consequences of Defendant's failure to protect the information entrusted to it.

132. Defendant continues to possess Plaintiff's and Class Members' Private Information in its records and backups. The continued retention of that information without adequate safeguards exposes it to further unauthorized access and disclosure and requires appropriate corrective relief.

133. Defendant's breach of its common-law duties to exercise reasonable care, and its failures and negligence, actually and proximately caused Plaintiff and members of the Class actual, tangible injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals; improper disclosure of their Private Information; lost benefit of their bargain; lost value of their Private Information; and lost time incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence. Plaintiff and Class Members have also suffered anxiety and emotional distress. These injuries and damages are ongoing, and Plaintiff and members of the Class continue to face the risk of further unauthorized disclosure and misuse of their Private Information. Plaintiff and members of the Class are entitled to damages in an amount to be proven at trial, including reasonable future monitoring and mitigation costs.

**SECOND CAUSE OF ACTION**
**Breach of Implied Contract**
**(Plaintiff on behalf of the Class against Defendant)**

134. Plaintiff incorporates the preceding allegations as though fully set forth here.

135. Plaintiff and Class Members entered into healthcare transactions with Marathon. Marathon solicited and required their Private Information to provide and administer services, and they furnished that information in connection with obtaining those services.

136. Marathon offered healthcare services requiring patients to disclose confidential identifying and medical information. Plaintiff and Class Members accepted that offer by obtaining care and providing the requested information. Marathon accepted and used that information to furnish and administer care, maintain patient accounts, and conduct its healthcare business.

137. The parties' conduct and the circumstances of those transactions gave rise to an implied agreement that Marathon would use reasonable safeguards to protect the Private Information it required patients to provide and would preserve its confidentiality against unauthorized access and disclosure. Marathon's privacy representations reinforced that undertaking.

138. The implied agreement included reasonable protection of the information against unauthorized access and disclosure. The circumstances of the healthcare relationship and Marathon's representations concerning confidentiality reflected an undertaking to use the information for authorized healthcare purposes and to safeguard it while it remained in Marathon's possession.

139. Marathon's public HIPAA representations, described above, further evidenced the reasonable security and confidentiality protections associated with its services. Those protections were especially material because patients had to disclose highly personal information to receive appropriate care.

140. The reasonable protection of patient information was a material part of the services provided. Defendant required sensitive information to deliver those services and accepted that information in a confidential healthcare relationship. Plaintiff and Class Members furnished it for authorized care and administration, with a reasonable expectation that Marathon would preserve its confidentiality.

141. Plaintiff and Class Members performed their obligations by supplying the information necessary for their care. Marathon accepted those benefits and retained the records in connection with its services. Paying Class Members also paid money for healthcare services, which Marathon accepted in connection with those transactions.

142. Defendant materially breached the implied agreements by failing to implement and maintain reasonable safeguards and by maintaining the information in a manner that permitted unauthorized access, acquisition, and disclosure in the Data Breach.

143. The breaches included inadequate assessment and correction of security risks, insufficient restrictions on access to patient records, deficient monitoring for unauthorized activity and data removal, and inadequate incident response.

144. Marathon's undertaking required reasonable performance of the confidentiality and safeguarding obligations inherent in its receipt and use of information for healthcare services. By failing to perform those obligations, Marathon deprived Plaintiff and Class Members of the confidential handling of information undertaken in the healthcare relationship.

145. Plaintiff and Class Members provided the information required of them and satisfied their obligations under the implied agreements, or performance of any remaining obligation was excused by Defendant's material breaches.

146. Defendant's material breaches were the direct and proximate cause of Plaintiff's

and Class Members' injuries, as detailed above, including loss of the benefit of the confidentiality and safeguarding protections for which they bargained. Paying Class Members received services worth less than the services with reasonable data-security protections for which they paid.

147. Plaintiff and Class Members seek damages in an amount to be proven at trial for the losses caused by Defendant's breaches, including the loss of promised confidential handling of their information and future monitoring and mitigation costs. Affected members also seek their response expenses and lost time, and paying Class Members seek the difference in value between the services promised and those provided. Plaintiff and Class Members seek nominal damages for breach of the contractual obligation and appropriate relief requiring protection of records Marathon continues to retain.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment and Quasi-Contract**
**(Plaintiff on behalf of the Class against Defendant)**

148. Plaintiff incorporates the preceding allegations as though fully set forth here.

149. This claim is pleaded in the alternative to the implied-contract claim to the extent an enforceable contract does not govern the same subject matter.

150. Plaintiff and Class Members conferred benefits on Defendant by providing the Private Information necessary for Defendant to deliver and administer healthcare services. Paying Class Members also conferred monetary benefits by paying for those services. Defendant knowingly accepted those benefits.

151. Marathon used the Private Information to provide treatment, administer patient accounts, and seek payment for healthcare services. Its receipt and use of that information conferred benefits directly connected to the transactions in which Plaintiff and Class Members entrusted it with their records.

152. Plaintiff and Class Members provided those benefits with the reasonable expectation that Defendant would maintain safeguards appropriate to the information. Defendant retained the benefits of the transactions while failing to provide those safeguards.

153. It would be unjust for Defendant to retain the portion of the benefits attributable to reasonable data-security protections that it failed to provide. Defendant accepted those benefits through healthcare transactions that included an obligation to safeguard confidential patient records, while failing to furnish the corresponding protections.

154. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members the benefits unjustly retained at their expense because of Defendant's misconduct, including the value of safeguarding obligations Defendant accepted but failed to perform and, for paying Class Members, the portion of payments attributable to those protections.

**FOURTH CAUSE OF ACTION**
**Violation of the Confidentiality of Medical Information Act**
**Civil Code §§ 56.101 and 56.36**
**(Plaintiff on behalf of the California Subclass against Marathon)**

155. Plaintiff incorporates the preceding allegations as though fully set forth here.

156. Marathon is a provider of health care or contractor within the meaning of Civil Code section 56.05 and subject to section 56.101 in maintaining the medical information at issue. Marathon provides and administers healthcare through licensed professionals, operates healthcare centers in California, and obtains and maintains identifiable medical information in those operations.

157. Plaintiff and affected Class Members are patients within the meaning of the CMIA. The compromised records concern identifiable patients' medical history, conditions, and treatment and associated healthcare information. The records linking that information to particular patients constitute individually identifiable medical information within the meaning of Civil Code section

56.05.

158. The compromised medical information was linked to identifying details permitting it to be associated with particular patients and concerned their medical history, conditions, and treatment. Marathon maintained that information in the course of providing healthcare, including records concerning Plaintiff's care.

159. Civil Code section 56.101(a) requires Marathon to create, maintain, preserve, and store that information in a manner that preserves its confidentiality. A negligent failure to do so subjects Marathon to the remedies provided by Civil Code section 56.36(b).

160. Marathon negligently failed to preserve the confidentiality of Plaintiff's and Class Members' medical information. It failed to maintain reasonable administrative, technical, and physical safeguards appropriate to the records; failed to prevent unauthorized access and acquisition; and failed to detect and interrupt the intrusion so as to prevent or materially limit the unauthorized access and acquisition alleged above.

161. The unauthorized person deliberately accessed, exported, acquired, and reviewed identifiable medical information maintained by Marathon, including diagnosis and treatment information linked to particular patients.

162. Unauthorized review of the exported identifying and medical information breached its confidentiality. The acquisition and review exposed private medical facts to a person outside the authorized healthcare relationship and deprived affected patients of confidentiality and control.

163. Plaintiff and Class Members did not authorize the acquisition, review, publication, sale, or other use of their medical information by the attackers. Marathon's negligent maintenance and storage of the information caused its release and the injuries alleged in this Complaint.

164. Marathon is liable for damages in an amount to be determined at trial, including the

statutorily provided nominal damages of $1,000 for Plaintiff and each Class Member whose confidential medical information was negligently released, together with actual damages sustained as a result of the release under Civil Code section 56.36(b).

**FIFTH CAUSE OF ACTION**
**Violation of the Consumers Legal Remedies Act**
**Civil Code § 1750 et seq.**
**(Plaintiff on behalf of the California Subclass against Marathon; injunctive relief only)**

165. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

166. Plaintiff and the Class Members represented under this count are consumers within the meaning of Civil Code section 1761(d), and their acquisition of healthcare services from Marathon constituted transactions within the meaning of section 1761(e). The services were obtained for personal, family, or household purposes.

167. The confidentiality and reasonable protection of the Private Information Marathon required patients to provide were material characteristics of its healthcare services. Through its HIPAA representations, related privacy representations, and course of dealing with patients, Marathon represented that its services included reasonable and legally compliant protection of that information.

168. Marathon had a duty to disclose material deficiencies in its safeguards because it possessed exclusive or superior knowledge of its systems and security practices, and because its statements about the protection of patient information were misleading without disclosure of those deficiencies. Patients could not reasonably discover those internal conditions before obtaining care.

169. Marathon failed to disclose that it did not maintain reasonable safeguards appropriate to the sensitivity of the information it required patients to provide. The omitted facts

concerned the protection of confidential identifying and medical information and were material to a reasonable patient deciding whether to obtain services or entrust information to Marathon.

170. Marathon violated Civil Code section 1770(a)(5) by representing that its healthcare services had privacy and security characteristics and benefits they did not have. Marathon also violated section 1770(a)(7) by representing that its services met a standard or quality of protection of patient information that it did not provide.

171. Marathon's omission of material deficiencies in its safeguards accompanied its solicitation and acceptance of Plaintiff's confidential information for ongoing healthcare services. Plaintiff supplied that information to obtain confidential care. Marathon failed to provide the reasonable confidentiality protections associated with those transactions, and its failures resulted in the acquisition and exposure of Plaintiff's information.

172. Marathon's omissions and practices were common to the consumers represented under this count. Marathon required those consumers to provide sensitive information in connection with healthcare services while failing to disclose the material security deficiencies described above.

173. As a direct and proximate result, Plaintiff obtained services lacking the represented confidentiality protections and lost confidentiality and control over identifying and medical information entrusted to Marathon. Affected Class Members suffered corresponding transaction, confidentiality, mitigation, and emotional injuries.

174. This cause of action seeks injunctive relief under Civil Code sections 1780(a)(2) and 1782(d), requiring Marathon to cease the challenged practices and maintain reasonable safeguards for retained patient information. Plaintiff seeks reasonable attorneys' fees and costs under section 1780(e). He reserves the right to amend to seek damages and other available relief

after compliance with section 1782.

**SIXTH CAUSE OF ACTION**
**Violation of the Unfair Competition Law**
**Business and Professions Code § 17200 et seq.**
**(Plaintiff on behalf of the California Subclass against Marathon)**

175. Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

176. The Unfair Competition Law ("UCL") prohibits unlawful, unfair, and fraudulent business acts and practices. Marathon's collection, maintenance, and protection of patient information were part of its business practices in providing healthcare services to Plaintiff and Class Members.

177. Marathon's practices were unlawful because they violated the CMIA, including Civil Code section 56.101, and the CLRA, as alleged in this Complaint. The practices exposed confidential patient records to unauthorized access and use and deprived patients of the privacy protections associated with the healthcare services they obtained.

178. Marathon's practices were unfair because it collected and retained highly sensitive information without reasonable safeguards against foreseeable unauthorized access and disclosure. The resulting injury to consumers was substantial, was not reasonably avoidable by patients who could not inspect Marathon's internal systems, and was not outweighed by benefits to consumers or competition.

179. The practices also contravened the public policies protecting confidential medical information and requiring reasonable security. Marathon could have provided its services while maintaining reasonable safeguards and preserving patients' confidentiality.

180. Marathon's representations and omissions were likely to deceive reasonable consumers into believing that it provided the reasonable privacy and security protections

associated with its healthcare services. Marathon possessed superior knowledge of its security practices and failed to disclose the material deficiencies alleged above.

181. Plaintiff obtained healthcare services from Marathon and entrusted it with confidential identifying and medical information. Marathon accepted the information for care and its administration, while failing to disclose material deficiencies in its safeguards. Those deficiencies caused the unauthorized acquisition and exposure of the information Plaintiff entrusted to Marathon.

182. Plaintiff and affected California Class Members were deprived of the confidential information they entrusted to Marathon and the value of that information as private property. Marathon used and retained that information for its healthcare business while failing to provide the safeguarding protections associated with its receipt. Paying members additionally lost the value of security protections included in the services for which they paid.

183. Plaintiff and affected Class Members are entitled to equitable relief, including restitution of money or property acquired from them through Marathon's unlawful, unfair, and fraudulent business practices; a permanent injunction enjoining those practices and requiring reasonable protection of patient information; and other equitable relief the Court deems proper. They also seek attorneys' fees and costs as allowed by law.

**SEVENTH CAUSE OF ACTION**
**Invasion of Privacy under the California Constitution**
**Article I, Section 1**
**(Plaintiff on behalf of the California Subclass against Marathon)**

184. Plaintiff incorporates the preceding allegations as though fully set forth here.

185. Plaintiff and Class Members have a legally protected privacy interest in their confidential identifying and medical information under article I, section 1 of the California Constitution. Their records concern their health, treatment, and other private matters entrusted to

Marathon for healthcare purposes.

186. Plaintiff and Class Members reasonably expected that information supplied in a confidential healthcare relationship would remain protected from unauthorized acquisition and disclosure. That expectation arose from the nature of the information, the limited purposes for which it was provided, and Marathon's undertaking to preserve medical confidentiality.

187. Marathon's acts and omissions alleged above caused a serious invasion of those privacy interests. Unauthorized persons accessed and acquired confidential patient medical records outside the authorized healthcare relationship. The compromise exposed those records to review, copying, dissemination, and misuse.

188. The loss of confidentiality of information linking identifiable persons to their medical care was substantial in nature, scope, and impact. The unauthorized access and acquisition of those records would be highly offensive to a reasonable patient who supplied them to obtain confidential care.

189. The acquisition and exposure were unrelated to any authorized treatment, payment, or healthcare purpose. Defendant could have provided its services and maintained the records while implementing reasonable safeguards against the unauthorized acquisition alleged here.

190. Marathon's unreasonable security practices were a substantial factor in causing the invasion and the resulting loss of confidentiality and control. Plaintiff and Class Members seek compensatory relief for the loss of confidentiality and control over their medical information and the value of the privacy interest invaded, in an amount according to proof.

191. Marathon continues to possess Plaintiff's and Class Members' Private Information without adequate safeguards. Plaintiff seeks injunctive relief protecting those records against further unauthorized access and disclosure, in addition to other relief available for the invasion

alleged here.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, requests judgment against Defendant as follows:

192. Certifying the Class, appointing Plaintiff as its representative, and appointing his counsel as Class Counsel;

193. Awarding Plaintiff and Class Members actual, compensatory, nominal, and statutory damages, including compensation for loss of confidentiality and control and, for affected members, lost benefit of the bargain, lost time and opportunity costs associated with reasonable monitoring and response, anxiety and emotional distress, and the other injuries alleged;

194. Awarding nominal damages of $1,000 per individual whose medical information was negligently released, together with actual damages under Civil Code section 56.36(b);

195. Ordering restitution and disgorgement of money or benefits acquired from Plaintiff and Class Members through the inequitable practices alleged above;

196. Awarding Plaintiff and affected Class Members injunctive relief and attorneys' fees and costs under the CLRA, and restitution and other equitable relief under the UCL;

197. Entering appropriate declaratory and injunctive relief requiring reasonable safeguards for retained Private Information, including documented risk assessments; testing and remediation of security weaknesses; authentication and access restrictions; protection of stored and transmitted information; personnel

training and supervision; oversight of service providers; security logging and monitoring; and effective incident-response procedures;

198. Requiring appropriate, complete, and accurate disclosures concerning the Data Breach, including the categories of information compromised for affected individuals, together with reasonable credit, identity, and medical-identity monitoring, identity-restoration assistance, and other measures to address the consequences of the Data Breach, and awarding the reasonable costs of those services and measures;

199. Requiring reasonable retention and secure-disposal practices consistent with applicable medical-record requirements and evidence-preservation duties;

200. Awarding reasonable attorneys' fees, litigation expenses, and costs as authorized by Code of Civil Procedure section 1021.5 and other applicable law;

201. Awarding prejudgment and postjudgment interest as permitted by law; and

202. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 16, 2026

Respectfully submitted,

**WILSHIRE LAW FIRM, PLC**

*/s/ Brian J. Ellsworth*
Brian J. Ellsworth (CA SBN 326756)
*Pro Hac Vice Forthcoming*
660 S. Figueroa St., Sky Lobby
Los Angeles, California 90017
Telephone: (213) 381-9988
Facsimile: (213) 381-9989
brian.ellsworth@wilshirelawfirm.com
ConsumerLitigation@wilshirelawfirm.com

*Attorney for Plaintiff and the Proposed Class*